(C. D. 1681)

PEARLDUCK, INC. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided February 10, 1955)

*John D. Rode* for the plaintiff.
*Warren E. Burger*, Assistant Attorney General (*Richard H. Welsh*, trial attorney), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges

LAWRENCE, Judge: Plaintiff imported two sizes of small scissors in leather cases. The collector of customs classified the merchandise

as scissors, valued at more than $1.75 per dozen, pursuant to the terms of paragraph 357 of the Tariff Act of 1930 (19 U. S. C. § 1001, par. 357), as modified by the Annecy Protocol to the General Agreement on Tariffs and Trade (84 Treas. Dec. 403, T. D. 52373, and 85 Treas. Dec. 138, T. D. 52476), and duty was accordingly imposed at the rate of 15 cents each, plus 35 per centum ad valorem.

The sole claim of plaintiff is that the scissors and leather cases consist of "leather cases fitted or furnished with manicure or similar sets," which are described in paragraph 1531 of said act (19 U. S. C. § 1001, par. 1531), as modified by the trade agreement between the United States and the Argentine Republic (77 Treas. Dec. 138, T. D. 50504), or by the General Agreement on Tariffs and Trade (82 Treas. Dec. 305, T. D. 51802), and dutiable at 25 per centum ad valorem.

The pertinent text of the competing statutes governing this case are here set forth—

Paragraph 357 of the Tariff Act of 1930, as modified by the Annecy Protocol to the General Agreement on Tariffs and Trade, *supra:*

All scissors and shears (not including pruning shears or sheep
    shears), and blades for the same, finished or unfinished:

    \*         \*         \*         \*         \*         \*         \*
    Valued at more than $1.75 per dozen_____ 15¢ each and 35%
                                                ad val.

Paragraph 1531 of said act, as modified by the trade agreement between the United States and the Argentine Republic, *supra:*

Bags, baskets, belts, satchels, cardcases, pocketbooks, jewel
    boxes, portfolios, and other boxes and cases, not jewelry,
    wholly or in chief value of reptile leather, and manufactures
    of reptile leather or of which reptile leather is the component
    material of chief value, not specially provided for (whether
    or not of a class or kind with respect to which United States
    import duties have been reduced or bound against increase
    pursuant to any trade agreement heretofore concluded under
    section 350 of the Tariff Act of 1930, as amended).
Any of the foregoing permanently fitted and furnished with   25% ad valorem.
    traveling, bottle, drinking, dining or luncheon, sewing,
    manicure, or similar sets.

Paragraph 1531 of said act, as modified by the General Agreement on Tariffs and Trade, *supra:*

Bags, baskets, belts, satchels, cardcases, pocketbooks, jewel
    boxes, portfolios, and other boxes and cases, not jewelry,
    wholly or in chief value of leather (except reptile leather),
    or parchment, and manufactures of leather (except reptile
    leather), rawhide, or parchment, or of which leather (except
    reptile leather), rawhide, or parchment is the component
    material of chief value, not specially provided for:

    \*         \*         \*         \*         \*         \*         \*

Coin purses, change purses, billfolds, bill cases, bill rolls,
   bill purses, bank-note cases, currency cases, money
   cases, cardcases, license cases, pass cases, passport
   cases, letter cases, and similar flat leather goods_____ 25% ad val.

It is pointed out in the brief of plaintiff that "* * * insofar as applies herein, the only difference between the last two reductions in duty is that in one case the reduction was limited to reptile leather and in the other case it applied to all except reptile leather. Since the Argentine Trade Agreement is still in force and effect, the reduction applies to *all* such cases whether of reptile leather or not." [Italics quoted.]

Exhibit 1 was received in evidence as representative of the subject merchandise. It consists of two types of small scissors of the kind commonly used for manicuring, the larger of the two scissors having a corrugated section on the edge of one blade which may be used as a nail file. The scissors are contained in a small leather case as a convenient holder when carried in the pocket or purse.

The record consists of the testimony of one witness who was called by plaintiff, together with exhibit 1, and three documentary exhibits, numbered 2, 3, and 4.

Exhibit 2 not only illustrates the representative scissors in the case but describes the merchandise in issue as "The New dubl * * * duck No. 303 Trim Kit."

Exhibits 3 and 4 are copies of so-called orders placed by one of plaintiff's customers for the purchase of articles like exhibit 1.

Stanley Linn, sales manager and import buyer for plaintiff, testified that he had been with the company for about 10 years; that his company is an importer and wholesale distributor of products used largely by barbers, beauticians, and, to a smaller extent, by department stores and drug stores; that barber shears, scissors, and tweezers are supplied to barbers and beauticians for their use, and, in addition, they are supplied with shaving brushes, manicure sets, and tweezers of a nonprofessional quality for resale to their customers. According to the witness, the larger of the two imported scissors is designed for use in cutting fingernails and the smaller one is for cutting cuticle, that "you can't use a cuticle scissor for the nails and vice versa."

While the articles in controversy have been given the name of "Trim Kit," the witness testified that they were sold as manicure sets; that, in his opinion, a "Manicure set or kit is a grouping together of instruments which can be used to take care of a person's finger nails."

Linn testified that he designed and styled the imported item with the idea of its being carried on or about the person, primarily by women, the article having been originally offered for sale through beauty shops.

The testimony of Linn further discloses that he had sold the articles as manicure sets throughout the entire 48 States of the United States as well as in Alaska and Puerto Rico.

Upon the foregoing facts, which are not refuted, plaintiff contends that the importation is a leather case permanently fitted and furnished "with manicure or similar sets" and cites *United States* v. *Mark Cross Co.*, 4 Ct. Cust. Appls. 274, T. D. 33489, as authority for the proposition "that a set means two or more articles." In that case, the court said in part—

It is true, as contended by counsel for the appellee, that the Standard Dictionary does define a set to be a collection or group of things of the same general character intended to be used together and more than two in number. Etymologically speaking, that definition may be strictly correct. Nevertheless, we can not ignore the fact that a usage has grown up which persists in applying the term "set" to two things designed to be used together, to two things of different character intended to be used as complements of each other, and to two things having some such relation to each other as resemblance or natural affinity. And so we have in common use such expressions as "a set of cuff buttons," "a set of military brushes," meaning two like brushes for the hair, "a set of fencing foils," "a set of bicycle tires," "a set of furs," which may consist only of a fur muff and fur cape or neckpiece, "a set of colors," meaning the national and a regimental flag, "a set of clothes brushes," meaning two brushes for the clothing, one softer than the other. Possibly in these cases it would be better English to say "a pair" or "a couple" instead of "a set." Still, taking into account the fact that the majority of lexicographers do not expressly limit the term "set" to two articles we think the common usage has been long enough continued and sufficiently general to justify us in concluding that the word "set" in paragraph 452 was used by Congress in its popular rather than in its strict etymological sense.

It is the contention of defendant, however, that no attempt was made to establish a commercial meaning of the term "manicure set" which differs from its common meaning and, furthermore, that "A search of various dictionary and lexicographical authorities fails to disclose any definition of the term 'manicure set.'" It would seem, however, in the light of the decision of our appellate court in the *Mark Cross* case, *supra*, that "common usage has been long enough continued and sufficiently general to justify us in concluding that the word 'set' * * * was used by Congress in its popular rather than in its strict etymological sense." It logically follows that the merchandise represented by exhibit 1 is a "set," and since it is a matter of common knowledge of which we may take judicial notice that scissors of the kind under consideration are commonly used for manicuring, said exhibit 1 represents a manicure set.

Defendant invites our attention to the case of *Albert Westpfal* v. *United States*, 50 Treas. Dec. 320, T.D. 41806, wherein this court held that since plaintiff in that case had failed to show that a leather sheath containing three pairs of scissors was commonly or commercially known as a traveling case, the classification of the merchandise by the

collector was affirmed. However, an examination of that case discloses that the issues there and here are entirely different. The controversial question in the *Westpfal* case was whether the commodity described as a leather sheath containing three pairs of scissors should be classified as a "traveling" case, within the meaning of paragraph 1432 of the Tariff Act of 1922, or as "scissors" in paragraph 357 of said act.

We are clearly of the opinion upon the record before us that the imported articles here under consideration are, in fact, manicure or similar sets within the scope of paragraph 1531, as modified, *supra*, and that, in view of the claim relied upon by plaintiff, the present case is distinguishable from the *Westpfal* case.

Moreover, we are fortified in our conclusion that the articles are dutiable as "manicure, or similar sets" by reason of the fact that this is a "use" provision which ordinarily prevails over descriptive or general terms unless the intent of Congress is otherwise indicated.

Cases other than those considered have received our attention, but we find it unnecessary to discuss them here.

For the reasons above assigned and upon the record, we find and hold that the merchandise in controversy should be classified within the provisions of paragraph 1531, as modified, *supra*, and assessed with duty at the rate of 25 per centum ad valorem, as claimed by plaintiff.

Judgment will be entered accordingly.